Our next case is NantWorks, LLC v. Niantic, Inc., 24-2216. Mr. Blackburn, you have reserved five minutes of time to rebuttal. Yes, Your Honor. OK, we're ready when you are. May it please the court, Matthew Blackburn on behalf of the NantWorks appellants. The district court here invalidated two augmented reality patents by oversimplifying detailed method steps in the claim bodies that describe techniques for how to achieve certain technological improvements. And by ignoring either unrebutted factual evidence showing that there was an inventive concept or failing to address that factual issue. We would ask the court to reverse the district court. With the court's indulgence, I'm going to start with step one and start with the 518 patent. The district court here reduced the claim to providing information based on a location. Counsel, do you agree that claim seven is representative of the 518 patent claims? We do, for purposes of this appeal. Now, the 518 patent is talking about how to place AR into a scene. And if you take a look at the claims, there's a lot of detail in there about specifically how to do that. It's beyond merely providing information based on location. So first, you have to associate the AR content objects with tessellated tiles and a tile map. Then you have to identify tile sub-areas based on device location. Then you have to selectively populate the device memory with only the AR content objects that are associated with the tiles in that sub-area. And then you have to, and this is an important step that might be overlooked, you have to render the AR objects, but only those in the view of interest. And so what this claim is trying to balance is that in the prior art discussed in the specification, you had pre-caching of AR objects. And that was taking up a lot of memory and bandwidth in these edge devices that have limited memory and bandwidth. And that was causing AR to be delivered poorly. And so by doing this, you're limiting the number of AR objects that have to be provided to the device. And you're also providing just enough so that if the user moves the mobile phone, they can see a second or third AR object without having to wait for it to spool up. And so this was allowing them to place AR objects in a way that hadn't been done before. The second pattern that you can see. So what is that? An improvement in the field of augmented reality? It's a technological process that improves the AR technology. And under the case law, that is exactly what is patentable. One of the things that I think the court did wrong was overgeneralizing the claims. And that's something the parties hotly debated. Under TechSec, you really can't overgeneralize the claim. You have to look at the claim and see, is it telling you how to do the process? And we would say that our claim is certainly telling you how to do the process more than just merely providing information based on a location on a map. Counsel, did you say something to the effect of the claim that issue requires selectively populating? Did you use that terminology? Yeah, we're citing the claim. Selectively populating device memory with AR content objects associated with tiles in the sub area. That's that column of 27 lines 1 to 5 in claim 1. Claim 7 is a dependent claim off of that. Did I answer your question, Your Honor? I see the words populate. It might just be that I'm not reading as quickly as you are. Where is the selectively populating? I don't think the word selectively is there. I think it's because when you read the rest of the language in there, it's talking about what you populate into the memory. And it's only the AR objects that are in the tile sub area. Is a map grid a set of tessellated tiles? I think it could be. It doesn't have to be. But more than a tessellated tile is required by this claim. That's why that analogy sort of falls. Certainly maps with grids were known. But that's not what this claim is describing. It's talking about sending data to this device as needed and not before. And sending enough data so that you can get a good AR experience without having to have the data spool. That's not a problem that you would have ever had in this map context. And I think that's important because of DDR. These claims are definitely rooted in technology. Augmented reality can exist in technology. Augmented reality cannot exist anywhere excepting in computing devices. And so the question is, is the process that's embodied in our claim, is there a real world analog? And if you're looking for that real world analog into the map context in a gridded map, there's not enough there. It's not the entirety of what's described in the how in our claims. Which is talking about not just using tessellated tiles, but also deciding when to send the information, what information to send, and what to render. That's not something you have a real world analog for. How do you distinguish the Sanderling case? I thought that might come up. So that has to do with, I think, mostly the other patent, the 051 patent. And Sanderling is talking about location based ads. And that is exactly an example where you had a long standing practice. Outside the context of computers, of providing ads based on location. One example that comes to mind is you might get a flyer when you move into town that gives you all of the ads for the close businesses. Well, here there's no evidence in the record that shows that with the 051 patent, which is talking about a different invention where you're trying to enable context sensitive AR experiences, that that was actually known long ago. And so if you look at the claims for the 051 patent, this is the other AR patent, unrelated. It talks about determining context for the AR device and pertinent to the environment based on device location. That's the involvement of location, determining context. Then you identify the relevant AR objects that correspond to that context. And then you determine whether and how to alter the AR object presence based on location as well as something called the virtual element attribute. That's something that has never been done before outside the context of augmented reality. And so the Sanderling case doesn't have a long standing practice, we don't. They did not involve AR, they did not have a virtual element attribute. So it's actually quite different. Does that answer your question, Your Honor? For now. Now, the other thing I wanted to talk about was the analogies, no, actually improvements. One of the debates between the parties is whether or not the improvements in the claims have to be recited in the claim. And there was some language in the district court decision that suggested that they did. I would suggest whether it's Unilock, CosmoKey, or NPHISH, that this court's precedent says that absolutely you do not have to say my invention improves this AR technology this way in the claim. All that's required is that you have to claim something in the claim that provides the benefit and the benefit has to be explained in the specification. That's what this court's cases stand for. Now, they've cited, I believe it's Synopsys, Erickson, and Two-Way Media. Those cases can each be distinguished because what they're talking about in those cases was situations where the specification was describing a benefit that was separate and apart from what was being claimed. So for example, in one case, you had a benefit that was attendant to using a mobile device, but they didn't claim a mobile device. So you couldn't take credit for that improvement in a mobile device when you weren't claiming it. What do you intend as the technological improvement that is kept by the claims here? So in the context of the 518 patent, it's really talking about reducing bandwidth and using memory more efficiently. And that's the idea that you're only providing AR content to the user's device when they're in the right location. What was that, it reduces bandwidth? It's reducing bandwidth? It reduces bandwidth and also uses memory more efficiently. And then in the second patent, it's the 051 patent, it's talking about intelligent AR object rendering. And again, you look at the specification of that one. And there was a problem that the old systems of AR did not allow for objects to interfere with one another. And because of that, you wouldn't have realistic AR performances. And so all of the steps in the 051 patent are trying to get to a point where you can alter the presence of an AR object in a way that convincingly demonstrates that there's an interference between the AR objects. Can you point me to where in the claims I can see that that's captured what you just described? Sure, so it's 051 patent claim one. And we talked about how in column 21, line 59 is the first step determining context. So that's based on the- Column 51 line what? Column 21. Oh, column 21, sorry. 59 to 61. So the first step is that you determine context related to the AR device and pertinent to the environment based on location. Then you identify the AR objects that correspond to that context. Then, and this is probably the limitation that you should focus on, Your Honor, at line 65 to 67 in column 21, you determine whether and how to alter the presence of an AR object based on location and the virtual element attribute. And then you render the objects according to the altered presence. And if I can go back into the specification to kind of explain some of those words. Column three, lines 30 to 34. It says that this interference is not a mere filtering. Column 17, line 50 to column 18, line nine. It's talking about how you alter the presence of AR based on interference functions. And then column 18, lines 23 to 29 talks about how you want to alter the presence to get a full spectrum of experiences. Would you say that augmented reality is a separate, distinct technological field? I would. And distinct from non-augmented reality methods or systems? It's not artificial intelligence, for example, Your Honor. So what is it that this does within the field of augmented reality? I know what it does mechanically and the whole thing, which is very interesting. But what's the, you know, we have found that if you have a claim that is a technological answer to a technological program, you understand those line of cases. So what are we dealing with here? Is this a technological solution of some kind within just the AR field? I think it is, Your Honor. And the way I would analyze it is I take a look at the abstract idea that was identified by the court. And in general, that's been providing information based on location. And then I look at the software steps in the claim, and there's something more than just that in the claims. And the specification describes that those software steps are what are allowing you to contextualize the AR experience to allow the objects to appear to interfere with each other to provide this more realistic augmented reality experience. The fact that it's not in the real world, I don't think, makes it any less of an invention. Does that answer your question, Your Honor? Yes, it did. Thank you. I see I'm in my rebuttal time. I wanted to just briefly talk about the step two analysis, if I may. Sure. So I'm gonna focus basically on the 051 patent. I'm gonna rest on the briefs on the other one. That was a summary judgment decision. And I think what's interesting there is that they withdrew their expert's testimony. So we've got a situation where the court decided step two against us, the non-movement, where there was no evidence that the steps in the claim were not conventional. And in fact, we did have evidence in the claims that they were. But did the district court rely on that testimony that was withdrawn? It did not. What the court said, I think reading from the line, she was not very clear. She seemed to believe that all that was in the claims was the abstract idea. And I think when you look at the body of the claim, there's more there than just providing information based on location. So there's more than just the abstract idea, which wasn't analyzed. So it sounds like your primary argument with respect to that patent relies on winning under step two.  Thank you, Your Honor.  Caroline McKeith. Good morning, Your Honors. Good morning. So one of the questions I heard Your Honor ask was how does this improve augmented reality technology? Is this actually a separate field? And I think the answer is that it doesn't improve augmented reality technology at all. All we have here is a series of steps in order to get, obtain information, analyze the information, and then send the information somewhere else. Nothing about the technology is being changed. It's just a matter of maybe which information is being sent. And I think it's critical for us to go back for the 518 to look at the fact that my learned colleague was trying to say that the entire patent is about selectively sending and only sending and only a piece and only a little bit so that you get this benefit of reducing latency or somehow making the computer work better. But a careful read of the claim does not show that at all. The word selectively does not appear. Instead, you're actually just told to pick an object to send. It doesn't say send only the objects from within that field. It says, okay, I've got an entire area database, and then I have my gridded map within that area database, and then I'll look to a smaller area within that gridded map, and then I'll pick at least one thing from that map and send it on. In fact, the claim could actually be read to send only one piece of information, but the claim could also be read that if I tessellate my map only into two pieces and all the information's in the first piece, then all of a sudden I'm sending all the information down. So I've reduced no latency. I've provided no benefit to the computer whatsoever because the computer is just working in its normal, ordinary fashion in filtering. And of course, if you filter, if you do manage to find a smaller subset, though the claim doesn't require it, then you would achieve that result, but that's not because of the claim. And therefore, there is only the abstraction here. And when we go into step two for the 518, again, we have only the abstraction of simply sending information based on the location. And they just say, but it's somehow the tessellated tile, and it's that I have these different areas to pick, but the claim doesn't require you to do anything that would result in the benefits that we just heard about. Unless Your Honors have any other questions for the 518, I'll turn over to the 051. Now, on the 051, Your Honor asked specifically about the Sanderling case, and I really like the Sanderling case for the 051 because the Sanderling case, if you actually read the patent that's involved in the Sanderling case, it talked about taking digital data and putting it, sending it down to be applied to a photo, so a real-world thing. You're taking a digital representation, and you're applying it to a real-world thing. And that's exactly what the 051 patent is telling us to do. It's saying, make sure you know where you are, get your location information, then make sure that you understand what you're going to grab from this database, and maybe check out the context, too. You're not just in Washington, D.C., but you happen to be at the federal courthouse, so we'll send you a sticker that says All Rise, and you can put the All Rise on your photo because we have that information, and we send it to you. We heard instead that the entire thrust of the patent in the specification in the claims is about interference, but the problem is they didn't claim interference. This is a case that's very much akin to the you, why you, versus Apple case. In you versus Apple, the specification went on and on about how its invention to produce better pictures was to use a four-lens, four-sensor system where three were color and one was black and white. But by the time they got to the claims, they only claimed two sensors and lenses. Didn't restrict what they were or how they were. That is exactly the same as the case here. The specification does talk about, they thought one of the problems was interference. In other words, if I'm looking at, say, something in front of the podium, you can see my whole body, but if I'm behind the podium, you might not be able to because the podium is blocking me. And so the patent says it was trying to maybe think of a way to do that, but that's nowhere in this claim. The claim simply says, figure out your location, figure out the virtual element attribute, which from the claim construction, which has not been challenged here, is just the plain meaning of the term. And we know from Appendix 5895 that that's just plain meaning and we know from Appendix 5902 that Nantworks claimed that plain meaning to be a feature associated with the virtual element. So just something about it. So you're going to use the location and something about the piece of information to decide whether or not to alter the presence, but we know from the joint claim construction that, again, hasn't been appealed, alter presence just means alter the presentation. And we know from Appendix 71, column 18, lines 18 through 23 that altering a presence can be as simple as turning something on or off. Make it present, make it not present. Therefore, the claim simply requires, figure out what you're going to send and then alter the presence could just be, send it. Send that sticker. And that's all we have. Interference is not mentioned in any way and you cannot read it in from the specification just because they wished they had claimed it. So it did sound like with respect to the 051 patent, opposing counsel is arguing that the expert testimony might have created a genuine dispute on material that precludes summary judgment with respect to conventionality. I felt like that was the argument. I do feel like that's the argument that he's making. My response is, well, twofold. The first is we didn't ever withdraw our expert. We simply didn't rely on the expert and the court did not rely on our expert and said when reviewing the Turk expert declaration that they could ignore it because of Mortgage Grader and Amaranth, which says if it's merely conclusory observations, no facts, or pointed to things that are not in the claims and that's specifically in the Amaranth versus Apple decision where if the expert's discussion of that which is novel or supposedly inventive is to an unclaimed element, then it can be ignored. Here, Turk referred over and over again to the interference, which is nowhere in the claims. The rest of Turk's paragraphs are just conclusory statements either quoting the claim or then saying, therefore, it is not inventive. And so there was nothing for the court to wrestle with and that's what the court said and that's how that all came to be. If your honors want, I can go through each one of the paragraphs that was cited and explain to you why they're each conclusory, but I think they are pretty clear on their face that they're both conclusory and. What do you think is your best case for under step one for the 051 patent? I think my best case for the 051 patent is probably Sanderling because Sanderling, like the 051, looks to finding information based on location and then sending that information down and the patent in Sanderling makes clear that that information could have been digital virtual type information that was combined with a real world photo. I do, however, also think that it's very important for the 051 at step one to reference the fact that even if you could find that there were these number of steps, there is no how and the court came down with this decision in 637 versus Google very recently that really emphasized that even if you have a series of steps, you still have to explain how they're accomplished and not to pile on, but I would also add the AI visualize case. In the AI visualize case, much like in this case, you had a series of information stored in a large database and then you used a request or in this case location to simply bring a portion of that down to the user who wanted to see it and it wasn't actually changing anything at all. So I think all three of those cases are very helpful for step one. And what about with respect to the 518 patent? Do you have particular cases you'd like to highlight? So for the 518, as much as I like Sanderling, I think Sanderling applies very, very well here as well. I also very much like the IBM versus Zillow case. In IBM versus Zillow, there was a database of information that was stored in a server somewhere and in that case, the user could actually define a sub area and from that sub area, the computer would then send only that information and populate a list so you could see exactly what it was. In many ways, the Zillow case is actually a little more complicated than this case because the user got to define the entire area instead of it just being I walked up to a location and it was just graph. But so I would put Zillow first, otherwise also Sanderling. And my last question at least, well, don't hold me to that but that's what I think of my last question. I was trying to talk to opposing counsel about teflon tiles and maps. Do you have any specific response you want to give with respect to that? Absolutely. So the first thing I'd like to say is that there is a construction for tessellated tiles that was not disputed and that is just tiles fitted together to cover an area without gaps. And I do think that a gridded map is an exactly appropriate analogy. So you have a series of information and then you just divide the information into squares. Then from those squares, he says, oh, but it's tessellated and then there has to be a sub area and then there has to be a view of interest. But all you're doing there is I've got my map of the United States and it's gridded out. And then I say that my area of interest is California. And then within California, I'm looking right to the Bay Area and I only want the information that's in the Bay Area. That's exactly what's happening with this tessellated tile, just filtering down, down, down from the gridded map to another area, to a smaller area, to maybe what someone's looking at. And to do that, do you need an AR server? I don't, so, is there a difference between an AR server versus a non-AR server? I don't think so. All you need here. Would you agree that the AR technology is a distinct technology? So while I can agree that AR technology can be distinct, I think there are things about how you specifically render objects with each other in a single field. None of that's claimed here. And so while AR may be a different, separatable technology, it's certainly not invoked here and there's certainly no discussion of how to accomplish it in AR versus anywhere else. Instead, we're just taking information that happens to be AR and we're sending it down, which is no different from electric power, where we had information about power, but we just happen to be sending that information down versus some other kind of information. Unless your honors have any other questions, I appreciate your time. Thank you very much. Thank you, your honors. If you've got any questions based on that, I'm happy to answer them, but I did want to address the 637 case that counsel provided to us on Sunday. I think if you look at that case, there was no discussion, none in the claims of how to accomplish the technological improvement. That's the distinction. We have in our claims a discussion of how to achieve these benefits. Again, going to the 518, we identify the tile sub-area. Remind me again, what's the technological improvement? In the 518, it's really about placing AR objects in specific spots in an AR scene. So again, you have to look at all the steps. First, you're identifying a tile sub-area based on device location. Then you're associating AR with a sub-area. Then you're populating just the AR objects in that sub-area into the device memory, and then you're rendering the AR content. Do you need a separate computer to do that, a specialized computer? You do not need a specialized computer, your honor. You do need computer components, but that's not what this case is about. There's been no allegation that the components are specialized. Good. So we heard about the 637 patent case. We've talked about that. There was some criticism about selective, and I think that was picking up on your question. We think that selective is just a natural outcome of following the claim language. But it's not in the claims, you can agree with that. The word selective is not in the claims, but that's the effect of the claim language. Interference, that's something that I tried to address on my opening remarks. The word doesn't show up in the claim, but it's effectively there, because the claims talk about altering presence of the AR content, and at column 17, line 50 to column 18, line nine, they talk about how to suppress and enhance the presence of AR objects using an interference function. So it's clearly embraced by that claim language. Another point that counsel made on step two, she tried to distinguish Turk and his testimony on the 051 and whether there was an inventive concept. What I thought was interesting about that argument is that there was no evidence put forward by the court or by my colleagues on the other side to show that the 051 patent claims don't have an inventive concept. There's just simply no evidence on their side. It's their burden. Because there's no evidence and it's their burden, we would win on that, and summary judgment should have been denied. See, I'm out of my time. Is there any more questions? Thank you, Your Honor. Thank the parties for their arguments.